HIRAM B. BANGS *vs.* INHABITANTS OF BREWSTER.

A master mariner, whose domicil of origin was in the town of A., left A. in 1867 and went to sea with his wife, intending to make his home in the town of B. In pursuance of this intent, he in 1868 sent his wife to B., where she boarded at her father's house, and in July 1869 he arrived at B. himself. *Held*, that in May 1869 his domicil was in B.

CONTRACT to recover the amount of a tax assessed by the defendants on the plaintiff, for the year 1869, and paid by him under protest. At the trial in the Superior Court, before *Brigham*, C. J., the following facts appeared:

The plaintiff was born in Brewster, and continued to reside there until 1867. He was a shipmaster, and arrived at Brewster from a voyage in July 1867. In the following October, he became engaged to marry a woman who resided in Orleans, and previous to the engagement and until the marriage he made temporary visits to her in Orleans. In November he married her in Chelsea, went from Chelsea with his wife on November 12 on

board his ship which lay at Boston, and thence to sea, first to San Francisco, and then to Liverpool. On his arrival in Liverpool, in December 1868, he sent his wife, who was expecting to be confined, to her father's house in Orleans. She arrived there in February 1869, and the plaintiff himself arrived in port and went to Orleans in the July following. He and his wife boarded at her father's about one month, and then went to Chelsea, where he established himself.

The plaintiff testified "that on his arrival home in Brewster, in 1867, he found his father dead, his father's house, where he made his home when ashore, burned, and his friends scattered, that having children, but no wife, he determined to abandon his domicil in Brewster, and told one of the assessors of Brewster that he must not tax him again; and that, upon his engagement to be married, he determined to make Orleans his home, and continued in that determination until after May 1, 1869." The defendants introduced evidence tending to contradict the plaintiff, and to show that he did not intend to make Orleans his home; and they contended that even if the jury should be satisfied that the plaintiff intended to make Orleans his home, as he testified, he had not shown such a personal presence in Orleans as would authorize the jury to find that he acquired a domicil there.

The defendant asked the judge to instruct the jury as follows: "If the plaintiff only went to Orleans for temporary visits to his intended wife, previous to November 1867, when he went to sea, his subsequent sending of his wife to Orleans, where she boarded at her father's house, the plaintiff himself not going there until after May 1, would not justify the jury in finding a change of domicil to Orleans." "The plaintiff would not lose his residence in Brewster until he had gone to Orleans with a fixed purpose to make that his home."

The judge declined so to instruct the jury, and instructed them as follows: "The facts alone considered, that the plaintiff only went to Orleans for temporary visits to his intended wife, previous to November 1867, when he went to sea, and subsequently sent his wife to Orleans, where she boarded at her father's house, the plaintiff himself not going there until after May 1, would not

justify the jury in finding a change of domicil to Orleans, but these facts are to be considered as qualified or explained by the condition of his father's homestead, and of his family when he arrived at Brewster, his intentions then formed, his subsequent engagement to marry, the character of his visits to Orleans between October 1 and his marriage, and his occupation as master of a ship. The plaintiff, having his home for the purpose of taxation in 1867 in Brewster, retained that home until he left Brewster, intending not to return there to reside, and went to Orleans or some other town with an intent to have his home there for a definite or indefinite time, and his domicil would then be established in Orleans, or such other town, notwithstanding that while he thus resided in Orleans, or such other town, he was doubtful whether he might not, at a future time, return to Brewster, or go to some other town, and make his home there."

The defendant also asked the judge to instruct the jury that the plaintiff had not shown such a personal presence in Orleans as the law required in order to effect a change of domicil, but the judge refused so to instruct them.

The judge, against the defendants' objection, submitted the case to the jury upon the following questions, and instructed them that they should find for the plaintiff if they should answer either question in the affirmative. 1. " At the time when the plaintiff went to sea, November 12, 1867, did he then definitely intend to make Orleans his home?" 2. " When the plaintiff sent his wife, in December 1868, to Orleans, was it in pursuance of an intent to make Orleans his home?"

The jury answered both the questions in the affirmative; a verdict was returned for the plaintiff; and the defendants alleged exceptions.

*G. A. King*, (*H. P. Harriman* with him,) for the defendants.

*J. Higgins*, for the plaintiff.

MORTON, J. The question at the trial was whether the plaintiff had on May 1, 1869, acquired a domicil in Orleans. There is no doubt as to the rule of law that the plaintiff's domicil of origin in Brewster adhered to him until he had acquired a domicil somewhere else, and that in order to effect a change of domicil

he must not only have had the intent to make his home in some other town, but he must in fact have made his home there. The intent and the act must concur, and until the intent was consummated by an actual removal of his home, no change of domicil was effected. *Whitney* v. *Sherborn*, 12 Allen, 111. *Carnoe* v. *Freetown*, 9 Gray, 357.

The question is as to the application of this rule to the facts of this case. The plaintiff was a shipmaster, most of whose time was spent at sea. He went to sea in November 1867, taking his wife with him, and in December 1868 he sent his wife to Orleans, and she arrived there in February 1869. He did not arrive at Orleans until July 1869, so that he was not personally present in Orleans on May 1, 1869. The special findings of the jury settle conclusively that when he went to sea in November 1867 he had the definite intent to make Orleans his home, and that in December 1868 he sent his wife to Orleans in pursuance of that intent. We think the jury were justified in finding that his domicil was in Orleans on the first of May.

By sending his wife to Orleans with the intent to make it his home, he thereby changed his domicil. The fact of removal and the intent concurred. Although he was not personally present, he established his home there from the time of his wife's arrival. We think the learned judge who presided at the trial rightly refused to rule, as requested, that the plaintiff had not shown such a personal presence in Orleans as the law required in order to effect a change of domicil, and that the instructions given upon this subject, when applied to the facts of the case, were correct.

The defendants object that the instruction that the jury should find for the plaintiff if they answered either of the questions submitted to them in the affirmative, was erroneous, upon the ground that it required the jury to find a change of domicil from proof of an intention to remove, without an actual removal. We do not deem it necessary to consider whether this objection is founded upon a just construction of the bill of exceptions taken as a whole, because the finding of the jury upon the second question renders the first immaterial. This finding settles that the plaintiff sent

his wife to Orleans in pursuance of the intent then entertained to make it his home; and the question as to his intent at an earlier date, and its effect, becomes of no consequence to the rights of the parties in this suit. *Exceptions overruled.*